Dear Representative Kennard:
You have, on behalf of the East Baton Rouge Council on Aging, requested an opinion on the lawfulness of an Emergency Rule regulating services procurement by parish councils on aging, which was adopted by the Governor's Office of Elderly Affairs (GOEA) on March 12, 1990. The rule will become effective as a permanent rule on June 20, 1990.
Your opinion request excites a perennial issue in Louisiana government law — the conflict between state and local power. The substantive question presented is the nature and scope of GOEA's rule-making powers over the administration by the parish councils on aging of the state and federal programs for the benefit of the elderly population of Louisiana. The procedural issue is whether GOEA has followed the required procedure of both the Administrative Procedure Act (LSA-R.S. 49:953) and its own enabling statute (LSA-R.S 46:931) for the emergency rule and proposed rule change.
The substantive question is not reached for two reasons. First is that the procedural question yields a decisive answer on its own merits. Secondly, litigation over the interpretation of the old GOEA rule now being superceded by the new rule of June 20, 1990 is pending in district court, with GOEA being represented by the Department of Justice. Although you are not a party to that suit, and this writer is not involved in it as counsel to GOEA, it would be improper for this opinion to consider any issue of law included therein, and further, such consideration of the substantive issue possibly also implied in that litigation (involving rule-interpretation) would violate the internal policy of the Department of Justice to not render opinions on matters in litigation before courts of law. This opinion is restricted to the validity of the new rule announced March 9, 1990 by GOEA. *Page 2 
The March 12, 1990 Emergency Rule promulgated by GOEA, according to the notice of intent, was adopted for the following reasons: "The Emergency Rule was adopted to avoid federal sanctions." There was no further statement as to when federal sanctions had been threatened or were expected, and whether normal rule-making procedures would have obviated the imposition of sanctions as well.
LSA-R.S. 49:953B(1) states the two exclusive grounds for the issuance of an emergency rule in contravention of the procedural requirements for rule making in R.S. 49:953A(1). Section 953B(1) provides, in pertinent part:
 "if an agency finds that an imminent peril to the public health, safety or welfare requires adoption of a rule . . . it may proceed without prior notice and hearing that it finds practicable, to adopt an emergency rule. The provisions of this Paragraph also shall apply to the extent necessary to avoid sanctions or penalties from the United States." (Emphasis added.)
Both the "peril" and "sanctions" exceptions for emergency rule making imply a necessity involving the public interest which obviates the need for the preferred procedural process of R.S.49:953A. The "sanctions" exception expresses this clearly by the words "to the extent necessary."
The Attorney General interprets this section to mean that federal sanctions or penalties must be "imminent." In other words, such federal sanctions will be imposed before the normal procedure for rule making can be perfected. This emergency rule authority is intended to prevent the imposition of federal sanctions pending the formal process for adoption and promulgation of a rule. Stated in shorthand, if no federal sanctions were threatened or reasonably foreseen to be imposed before the regular June 20, 1990 effective date of the rule change for services procurement, the Emergency Rule is invalid by reason of this substantive infirmity. If it doesn't meet the narrow exceptions to Sec. 953A stated in Sec. 953B(1), then a proposed rule is invalid because the agency is not substantively authorized by Sec. 953B(1) to waive the procedural norm of Sec. 953A. *Page 3 
The notice requirement for an emergency rule is less substantive and burdensome than for the permanent rule making process; R.S. 49:9535 (1) allows any "abbreviated notice" which is practicable." This provision refers to the requirements of R.S. 49:953A(1) rather than the special grounds required to use the emergency procedure of R.S. 49:9535 (1). In other words, where valid grounds for invoking the emergency authority are present, the content of the notice and procedure for hearing on the emergency rule may be waived as necessary by the agency. However, the notice for an emergency rule must state facts whichconstitute grounds under one of the two standards stated by R.S.49:953B(1) to authorize the invocation of the emergency procedure. Before the emergency rule may be promulgated, the public must be noticed of facts which constitute an imminent
(1) peril to the public health, safety or welfare or (2) imposition of federal sanctions or penalties. The agency cannot simply state a conclusion, but must state the facts which justify the conclusion that either an imminent peril exists or the imminent imposition of federal sanctions will occur. "Imminent" means before the adoption of a permanent rule by normal rule making procedure.
Secondly, both the Emergency Rule and the permanent rule change may suffer another procedural infirmity in their facial non-compliance with the mandate of LSA-R.S. 46:935, which requires the director of the GOEA to receive the advice and consent of the Louisiana Aging Advisory Board (cf. 46:933) "on all rules and regulations promulgated by (GOEA) which pertain to elderly affairs." While a declaration that proposed rules and rule changes were submitted to this Advisory Board is not required in the notice of intent, failure to conform with R.S.46:934, which is mandatory, may invalidate either the Emergency Rule or permanent rule, or both.
Finally, while this writer does not have the published notice of intent of the Louisiana Register, the typed notice issued by GOEA does not facially reflect the inclusion of either the fiscal impact statement or the economic impact statement required by law which had been approved by the Legislative Fiscal Office. R.S. 49:953 requires these statements in the notice of the intent of the promulgating agency. R.S. 49:954 prohibits the enforcement of the rule without publication of the fiscal and economic statements in the Louisiana Register. If these legislative fiscal statements were published in the Register, while that statutory defect would be cured, the other defect in the notice of intent resulting from its non-conformity with R.S.49:953A(1)(a)(ii) and (iii) would subsist. Even rules which implement or change *Page 4 
procedure are subject to these requirements for a fiscal and economic impact statement from the legislative fiscal office. Opinion of the Attorney General No. 87-752.
In conclusion, there appear to be substantial procedural infirmities in this particular instance of rule making by the Governor's Office of Elderly Affaris. Some of these insufficiencies are curable; some appear not to be.
Trusting this to be of sufficient information, I am
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: CHARLES J. YEAGER
Assistant Attorney General
CJY:tm
OPINION NUMBER 90-226A
July 2, 1990
 64-2 — LOUISIANA ADMINISTRATIVE PROCEDURE LSA-R.S. 49:953
Ms. Vicky Hunt, Director Notice for Emergency Rule must Governor's Office of Elderly state facts which when presumed Affairs true establish one of two P.O. Box 80374 grounds for issuance of an Baton Rouge, LA 70898-0374 emergency rule.